# Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| NETCHOICE,<br><br>*Plaintiff*,<br><br>v.<br><br>JASON S. MIYARES, in his official capacity as Attorney General of the Commonwealth of Virginia,<br><br>*Defendant*. | Case No. 1:25-cv-02067 |

**DECLARATION OF STOP CHILD PREDATORS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Stacie D. Rumenap, declare as follows:

1. I am the President of Stop Child Predators (SCP), a 501(c)(3) nonprofit organization founded in 2005 to combat the sexual exploitation of children and protect the rights of crime victims nationwide. I have led SCP since 2006, having worked in all 50 states—including spearheading the passage of Jessica's Law in 46 states. SCP brings together policy experts, law enforcement officers, community leaders, and parents to launch state and federal campaigns to inform lawmakers and the public about policy changes that will protect America's children from sexual predators both online and in the real world. I make this declaration from personal knowledge.

2. SCP works with parents, lawmakers, and policy experts to better educate families, schools, and lawmakers about the potential risks children face both in the real world and online, including grooming, luring, bullying, child pornography, and other harms to children. SCP has worked for nearly two decades to open lines of dialogue with lawmakers and technology company stakeholders, to help them determine the best and most practical ways to protect children from these risks.

3. SCP focuses significant policy efforts on keeping social media, and the internet more broadly, safe for children. In 2008, we launched the Stop Internet Predators (SIP) initiative in recognition that child predators often use social-networking platforms to recruit child sex-trafficking victims, to groom children for sexual exploitation, and to sexually victimize children in general, and sex offender management, and that child safety must therefore be addressed both in the real world and online. Our Digital Safety Project adapted the SIP initiative's goals to a new online landscape and operates from the premise that the private sector plays an important role in protecting children. Through this project, we also work to ensure that the government does not

unnecessarily interfere with the protection of children or the ability of parents to decide what is best for their children. Some of our recent policy recommendations to the White House, Congress and state law makers have been included in our White Paper "Adapting to the Future of Child Predation."[1] Our film, *How Do We Protect Children from Exploitation*, further elaborates on our positions.[2] Our *2025 Policy Roadmap* was distributed to the White House and the 119th Congress at the outset of the new Presidential Administration.[3]

4. We believe that the internet and social media have incalculable value for our young people—particularly those who are disabled, suffer from anxiety, or are in other circumstances that make it difficult for them to connect in person. We therefore work with leading online platforms, including Plaintiff's members, to develop and enforce policies that prioritize children's safety while still promoting free speech and ensuring children have access to valuable technology. Our goal is to help businesses develop tools and mechanisms to identify and promptly take down illegal content (Child Sexual Abuse Material, or CSAM), and to help them identify products and services that may be used by predators to target and lure children. These tools and mechanisms help businesses mitigate the potential for their products and services to be used to cause harm.

5. We believe that parents are the first line of defense in protecting children online and that well-funded and coordinated law enforcement is an essential element of any strategy to protect

---

[1] Stop Child Predators, (December 2023), "Adapting to the Future of Child Predation: Why Criminal Justice Must Be at The Core of Any Effort to Prevent Child Exploitation Online." [White paper], available at https://www.stop-child-predators.org/whitepaper.

[2] Stop Child Predators, (2024), "How Do We Protect Children from Exploitation." [Film], available at https://www.stop-child-predators.org/film.

[3] Stop Child Predators, (2025), "A Roadmap to Fight Child Exploitation for President Trump and the 119th Congress," available at https://www.stop-child-predators.org/_files/ugd/dbd234_06d35233e8c041bf878f4b81a8f7c4b6.pdf.

children from victimization online. We also feel strongly that the private sector plays a critical role in limiting the proliferation of harmful content. For example, CSAM is prolific on the internet and traverses all its corners. In 2024 alone, leading social media platforms reported 61.5 million photos and videos of children being sexually abused—more than 99.2% of reports were to the CyberTipline.[4] SB854 specifically targets social media websites, many of whom proactively combat child predation and collaborate with law enforcement by providing reports to the CyberTipline.

6. We are concerned that SB854, while ostensibly intended to make the internet safer for children, will instead result in serious negative outcomes for children. For example, the Act does not include any investment in law enforcement, which means it does not take a single predator off the street. By ignoring that essential element in any effective fight against child exploitation, this bill only perpetuates abuse by leaving actual abusers on the street. Instead of investing more funds into law enforcement, many states have focused their efforts on civil liability for social media companies. But these private companies cannot prosecute such crimes. And Virginia, though ranked 12th in overall population, ranks 9th with 28,155 cyber tip referrals. Though there is little data captured on how many of those tips are evaluated or even prosecuted, there is abundant evidence that conviction rates are low. States should focus their resources on successfully addressing the abundant crimes that they are already aware of before addressing civil liability against some of the greatest tools they have in reporting crimes against children.

---

[4] National Center for Missing and Exploited Children, (2025), "2024 CyberTipline Reports by Electronic Service Providers (ESPs)," available at https://www.missingkids.org/content/dam/missingkids/pdfs/cybertiplinedata2024/2024-reports-by-esp.pdf.

7. We are also concerned that SB854 seeks to place government in the parental role and could lead some parents to relax their monitoring of their children's online activity which would lead to further online crimes against minors.

8. Of particular concern is that SB854 requires minors under the age of 16 to obtain parental consent prior to accessing more than one hour of social media content. Va. Code 59.1-577.1(B). The law mandates that covered websites "use commercially reasonable methods" to verify "whether a user is a minor." *Id.* Age verification methods can pose a high security risk, however. Whatever age-verification methods they use, businesses collect personal information from minor users and their parents, creating an easily penetrated cache of sensitive data regarding these children. We consider it not a risk but an inevitability, given the realities of data security, that one or more of these data sets will be breached, exposing the personal information of children to bad actors. Children are already a prime target of identity thieves. Breaches of their data may go unnoticed for years, until they reach adulthood and apply for a student loan or their first apartment. We believe the new law would only exacerbate that already serious problem.[5]

9. SB 854 also lacks any exceptions for children whose parents or caregivers are abusive or incapacitated. SB854 would the most vulnerable children of supportive online communities and/or resources—isolating them in their abuse. It has been demonstrated that young people trapped in abusive congregate care settings have turned to social media to report their

---

[5] Weisman, Steve, *The Unknown Danger of Child Identity Theft*, Forbes (September 13, 2024), available at https://www.forbes.com/sites/steveweisman/2024/09/13/the-unknown-danger-of-child-identity-theft/

abuse.[6] Thus, the law's potential good intentions only serve to amplify the danger some young people face.

10. In my work to make the internet safer for children, I have also become familiar with the types of technology that companies have considered to verify the ages of their users. I understand that this technology raises accessibility concerns. For instance, a technology that requires a user to take a photograph of their own face would not be accessible to a person who does not have an integrated camera on their device and may prove practically inaccessible to someone who is vision impaired and cannot easily take a photograph. Thus, we are opposed to a solution that would render portions of the internet inaccessible to disabled and under-resourced individuals.

11. While we believe the government should be involved in keeping the internet safe for children, we also believe that those efforts should be focused on bolstering law enforcement to remove criminals from the equation. The focus on technical and administrative approaches only obscures the need to invest more aggressively in law enforcement responses. Private companies cannot arrest predators. Only law enforcement can do that, especially in a scenario that increasingly involves international organized crime. By passing laws like this one states unwittingly enhance dangers to children by ignoring perpetrators and allowing them to continue to harm their victims. Meanwhile, by focusing on the one reliable pool of CSAM reporters upon which law enforcement can rely, laws like this literally ensure perpetual digital crime waves and ensure additional generations of victims.

---

[6] Wyatt, Elyse. *Manipulating Parents, Exploiting Children: The Need for Government Oversight of Private Youth Facilities*, 1 Bos. Univ. L.J. 33 (2024), available at https://www.bu.edu/pilj/files/2024/10/1.17.24_Final_PILJ_Manipulating-Parents.pdf.

\* \* \*

I declare under penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. §1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 21 day of November, 2025, in Washington, DC.

*Stacie D. Rumenap*

Stacie D. Rumenap