# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

NETCHOICE,

       *Plaintiff*,

v.

JAY JONES, in his official capacity as Attorney General of the Commonwealth of Virginia,

       *Defendant.*

Civil Action No. 1:25-cv-02067

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO STAY ORDER GRANTING NETCHOICE'S MOTION FOR PRELIMINARY INJUNCTION AND ENJOINING ATTORNEY GENERAL JONES FROM <u>ENFORCING SB 854 PENDING APPEAL</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

LEGAL STANDARD........................................................................................................ 5

ARGUMENT .................................................................................................................... 7

I.   Virginia is likely to succeed on the merits on appeal ........................................ 7

    A.   NetChoice's claims are subject to the *Moody* test for facial First
        Amendment challenges ........................................................................... 7

    B.   SB 854 survives First Amendment scrutiny ......................................... 11

        1.   SB 854 does not discriminate among different types of content ............. 11

        2.   SB 854 draws permissible distinctions between speakers without
            reference to the content of speech................................................ 13

    C.   SB 854 is narrowly tailored ................................................................. 15

II.  The equities favor a stay pending appeal......................................................... 19

    A.   Virginia will be irreparably harmed...................................................... 19

    B.   NetChoice will not suffer irreparable injury......................................... 20

    C.   The public interest favors staying the injunction pending appeal......... 20

CONCLUSION................................................................................................................ 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Perez*,
585 U.S. 579 (2018)................................................................................................20

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)................................................................................................13

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011)............................................................................................13, 16

*Bruni v. City of Pittsburgh*,
941 F.3d 73 (3d Cir. 2019)......................................................................................14

*Comput. & Commc'ns Indus. Ass'n v. Uthmeier*,
2025 WL 3458571 (11th Cir. Nov. 25, 2025).....................................14, 15, 16, 17, 18, 20, 21

*Courthouse News Serv. v. Smith*,
126 F.4th 899 (4th Cir. 2025) .................................................................................16

*Doe v. Burlew*,
165 F.4th 525 (6th Cir. 2026) ...............................................................................7, 9

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975)................................................................................................14

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)................................................................................................12

*Fitzgerald v. Alcorn*,
2018 WL 709979 (W.D. Va. Feb. 5, 2018) .............................................................19

*Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
2023 WL 5617894 (E.D. Va. Aug. 30, 2023)........................................................6, 7

*Free Speech Coalition, Inc. v. Paxton*,
606 U.S. 461 (2025)...............................................................2, 10, 15, 17, 18, 19

*Ginsberg v. New York*,
390 U.S. 629 (1968)................................................................................................20

*Giovani Carandola, Ltd. v. Fox*,
470 F.3d 1074 (4th Cir. 2006) ................................................................................13

*GLBT Youth in Iowa Schs. Task Force v. Reynolds*,
114 F.4th 660 (8th Cir. 2024) ...............................................................................8, 9

ii

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)...................................................................................................17

*Homans v. City of Albuquerque*,
  264 F.3d 1240 (10th Cir. 2001) ...................................................................................5

*Hulbert v. Pope*,
  70 F.4th 726 (4th Cir. 2023) ......................................................................................11

*In re Georgia Senate Bill 202*,
  160 F.4th 1171 (11th Cir. 2025) ................................................................................10

*L.W. ex rel. Williams v. Skrmetti*,
  73 F.4th 408 (6th Cir. 2023) ......................................................................................21

*Maryland v. King*,
  567 U.S. 1301 (2012)..................................................................................................20

*McCullen v. Coakley*,
  573 U.S. 464 (2014)...............................................................................................11, 13

*Miranda v. Garland*,
  34 F.4th 338 (4th Cir. 2022) ......................................................................................20

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024)........................................................................................1, 7, 8, 9, 10

*NetChoice, LLC v. Bonta*,
  152 F.4th 1002 (9th Cir. 2025) .............................................................................9, 10, 14

*NetChoice, LLC v. Bonta*,
  170 F.4th 744 (9th Cir. 2026) .................................................................................3, 7, 9, 10

*NetChoice, LLC v. Fitch*,
  145 S. Ct. 2658 (2025).................................................................................................21

*New Mexico v. Meta Platforms Inc. et al.*,
  No. D-101-CV-2023-02838 (N.M. First Jud. Dist. Ct. Mar. 24, 2026)................................3, 21

*Nken v. Holder*,
  556 U.S. 418 (2009)..................................................................................................6, 21

*Northrop Gruman Tech. Servs., Inc. v. DynCorp Int'l LLC*,
  2016 WL 3346349 (E.D. Va. June 16, 2016) ...........................................................................6

*Packingham v. North Carolina*,
  582 U.S. 98 (2017)...................................................................................................15, 16

iii

*Pierce v. N.C. State Bd. of Elections*,
    97 F.4th 194 (4th Cir. 2024) ...................................................................................6

*Project Vote/Voting for Am., Inc. v. Long*,
    275 F.R.D. 473 (E.D. Va. 2011) ..............................................................................6

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)............................................................................................11, 13

*Social Media Cases*,
    No. JCCP 5255 (Lead Case No. 22STCV21355)
    (Cal. Super. Ct., Cnty. of L.A. Mar. 25, 2026) ....................................................3, 21

*TikTok Inc. v. Garland*,
    604 U.S. 56 (2025)............................................................................................14, 16

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)................................................................................................20

*Turner Broad. Sys., Inc. v. F.C.C.*,
    512 U.S. 622 (1994)................................................................................................14

*United States v. Arthur*,
    160 F.4th 597 (4th Cir. 2025) ...........................................................................8, 9, 13

*United States v. Fourteen Various Firearms*,
    897 F. Supp. 271 (E.D. Va. 1995) ............................................................................6, 7

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989)................................................................................................18

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015)...........................................................................................17, 18

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)......................................................................................................6

*Worth v. Jacobson*,
    2023 WL 3052730 (D. Minn. Apr. 24, 2023)........................................................19

*Yates v. United States*,
    574 U.S. 528 (2015)................................................................................................12

**Statutes**

Va. Code § 59.1-575 ......................................................................................................12

Va. Code § 59.1-577.1 ..............................................................................................3, 11, 16

iv

Va. Code § 59.1-584 ...................................................................................................5, 20

**Rules**

Fed. R. App. P. 8(a)(2)(A)(i) ................................................................................5

Fed. R. Civ. P. 62(d) .........................................................................................1, 5

**Other Authorities**

ATTORNEY GENERAL NEWS RELEASE, *Attorney General Jay Jones Takes Steps to Keep Virginia's Children Safe from Predatory Social Media Companies*, https://tinyurl.com/y3p96smd .................................................................................5

Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.) .........................................5

**INTRODUCTION**

Virginia Attorney General Jay Jones respectfully requests that this Court issue a stay pending appeal of its Order granting NetChoice's Motion for a Preliminary Injunction. Dkt. 51; *see* Fed. R. Civ. P. 62(d). The Commonwealth enacted SB 854 last year, requiring social media platforms to change the default time limit for users under 16 to one hour per day, subject to adjustment up or down by the child's parent or guardian. The law went into effect on January 1, 2026. This Court entered a preliminary injunction on February 27, 2026, preventing the Attorney General from enforcing the law. The Attorney General appealed the preliminary injunction to the Fourth Circuit and moved that court for a stay pending appeal. On April 10, the Fourth Circuit denied the motion without prejudice and directed the Attorney General to request a stay from this Court first. He now does so.

This Court should exercise its discretion to stay the preliminary injunction pending appeal. On appeal, the Attorney General is likely to show that a preliminary injunction is not warranted in this case. At the very least, the merits could rationally be resolved in his favor. This case raises difficult and novel issues, and reasonable minds could—and have—differed on these questions.

First, this Court declined to apply the rigorous test for facial challenges required by *Moody v. NetChoice, LLC*, 603 U.S. 707, 724-26 (2024). For *all* facial challenges under the First Amendment, content-based or not, the plaintiff must identify the statute's full scope, and the district court must weigh its constitutional and unconstitutional applications. Because this Court did not hold NetChoice to that burden, the Fourth Circuit is at least likely to vacate the preliminary injunction and remand.

Second, contrary to this Court's ruling, SB 854 is content neutral. SB 854 requires a one-hour default for all social media platforms, no matter their content. This Court considered SB 854

1

content-based because the statute defines "social media platform" as not including websites that predominantly feature "content preselected by the provider and not generated by users" and offers examples of material those sites commonly publish: "news, sports, entertainment, ecommerce, or interactive gaming content." Those examples are not content-based carveouts. Social media platforms are covered—and non-social media sites are excluded—no matter the subject matter, messages, or viewpoints on their pages.

Third, SB 854 is sufficiently tailored to survive intermediate scrutiny, as *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025), makes clear. The statute fits the problem at hand; the one-hour adjustable default targets social media addiction and imposes only incidental hurdles to accessing social media. And Virginia is not limited to the tools that platforms have voluntarily provided—which would leave the Commonwealth with no meaningful way to protect its children. In ruling to the contrary, the Court held SB 854 to too high a standard.

Beyond the merits, the equities favor Virginia and a stay pending appeal. This Court recognized that Virginia "is facing a mental health crisis among its youth." Memorandum Opinion at 3, Dkt. 50 ("PI Opinion") (citing Dr. Melissa Nelson's Declaration ¶ 19, Dkt. 16-1 ("Dr. Nelson Decl.")). And the Attorney General's efforts to protect those children are now paused, leaving them at the mercy of the platforms. Virginia and its children suffer irreparable harm each day that the Commonwealth is unable to enforce SB 854. That significant injury is not outweighed by the purported First Amendment harms that worry NetChoice. SB 854 enables both children and social media platforms to convey whatever content they desire in the amount of time that parents permit their children to access the platforms.

Furthermore, since this Court ruled on the preliminary injunction, there have been several major developments in this rapidly changing area of law. The Ninth Circuit issued its opinion in

2

*NetChoice, LLC v. Bonta*, 170 F.4th 744 (9th Cir. 2026) ("*Bonta II*"), vacating a district court's preliminary injunction of California's social media law in part because the district court did not properly apply *Moody*. *Bonta II* provides further appellate support for Virginia's position. And, late last month, two different juries held major social media platforms liable for those harms, demonstrating the pressing need for SB 854. *See Social Media Cases*, No. JCCP 5255 (Lead Case No. 22STCV21355) (Cal. Super. Ct., Cnty. of L.A. Mar. 25, 2026); *New Mexico v. Meta Platforms Inc. et al.*, No. D-101-CV-2023-02838 (N.M. First Jud. Dist. Ct. Mar. 24, 2026).

Concurrently, the Attorney General is moving for expedited briefing on its motion to stay, which proposes that briefing conclude by April 22, 2026. The Attorney General respectfully requests the Court's disposition of the motion to stay by April 27, 2026, in light of the ongoing appeal. The Attorney General's opening brief in the Fourth Circuit is due today, April 15. Enforcement efforts have been paused by the preliminary injunction, and Virginia's children remain at risk.

## BACKGROUND

Social media is addictive and harmful to children, as this Court has found. PI Opinion at 3. Kids average 5 hours a day on social media, with many spending 10 or more hours scrolling— leading to never-before-seen rates of anxiety, depression, eating disorders, and self-harm. *Id.*; Dr. Nelson Decl. ¶ 16. "[F]acing a mental health crisis among its youth," Virginia's legislature unanimously enacted SB 854 to give parents a tool to help combat the epidemic their children are facing. PI Opinion at 3-4; *see also id.* at 27 (recognizing the "harms associated with the addictive aspects of social media" to the Commonwealth's youth). The statute strikes a careful balance between access to social media and overuse, solely requiring a one-hour daily default setting— which parents can adjust up or down—per platform, per day, for children under 16. Va. Code § 59.1-577.1(A)-(B).

NetChoice, a trade association of social media companies, mounted a facial, pre-enforcement challenge to the law, claiming it violates the First Amendment. NetChoice sued in November 2025 and sought a preliminary injunction. NetChoice Mot. for Prelim. Inj., Dkt. 4. The Attorney General opposed. Def. Opp. to Pl. Mot. for Prelim. Inj., Dkt. 16 ("Va. PI Opp."). The law went into effect on January 1, 2026. This Court entered a preliminary injunction on February 27, 2026. PI Order, Dkt. 51; *see also* PI Opinion.

Finding NetChoice likely to succeed on its First Amendment claim, the Court concluded that SB 854 is content-based because, in defining "social media platform," it "exempts certain subject matter." PI Opinion at 17-18. The Court focused on the statute's definition of "social media platform," construing the statutory *examples*—"news, sports, entertainment, ecommerce, or interactive gaming content"—of forums with "content preselected by the provider" as content-based *carveouts*. *Id.* at 18. The Court also faulted SB 854 for regulating "user-generated content, but not provider-selected content," reasoning that this "speaker preference" "should be treated as though it is content based." *Id.*

The Court then found that SB 854 failed both strict and intermediate scrutiny. It recognized that—as "NetChoice concedes"—"Virginia has an interest in protecting children, and from the established record, . . . this interest is compelling." *Id.* at 20 (citing Dr. Nelson Decl. ¶¶ 19-22).[1] But, finding the statute both overinclusive and underinclusive, the Court held that SB 854 was not narrowly tailored and Virginia had not tried "other less restrictive means to achieve [its] goals," like "launch[ing] advertising campaigns to ensure parents know how to use the current tools" provided by social media platforms. *Id.* at 22.

---

[1] The Court did not make explicit factual findings but credited the evidence and opinions of Dr. Melissa Nelson, a pediatrician and vice chair of the Virginia State Board of Health. PI Opinion at 3 n.2 (noting that NetChoice does not challenge the declaration's accuracy).

4

Prior to the preliminary injunction, the Attorney General sent compliance letters to social media platforms that had not adhered to the statute, triggering the statute's 30-day notice-and-cure period. Va. Code § 59.1-584(B); *see* OFFICE OF THE ATTORNEY GENERAL NEWS RELEASE, *Attorney General Jay Jones Takes Steps to Keep Virginia's Children Safe from Predatory Social Media Companies*, https://tinyurl.com/y3p96smd. Those enforcement efforts are now paused, as required by the preliminary injunction.

The Attorney General appealed to the Fourth Circuit on March 3, 2026, *see* Notice of Appeal, Dkt. 52, and moved the Fourth Circuit to stay the preliminary injunction pending appeal on March 9, *see* Mot. for Stay of Prelim. Inj. Pending Appeal ("Mot. to Stay PI"), *NetChoice v. Jones*, No. 26-1252 (4th Cir. Mar. 9, 2026), Dkt. 6-1. The tests for preliminary injunctions and stays pending appeal overlap, requiring this Court to "essentially make the same inquiry it made before." *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (per curiam). Given the similarities between these tests, Virginia did not seek a stay first with this Court because it considered it "impracticable." Fed. R. App. P. 8(a)(2)(A)(i); *see* Mot. to Stay PI at 6 n.1. The Court had already ruled that SB 854 likely violates the First Amendment and balanced the equities in NetChoice's favor.

On April 10, the Fourth Circuit denied the motion to stay because it had not been presented to this Court first. Order, *NetChoice v. Jones*, No. 26-1252, (4th Cir. Apr. 10, 2026), Dkt. 25.

## **LEGAL STANDARD**

This Court has broad discretion to stay its injunction pending appeal.  Fed. R. Civ. P. 62(d). This discretion remains even after an appeal is taken. Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.) (gathering cases). For a stay pending appeal, the movant must show that (1) it is "likely to succeed on the merits" of the appeal, (2) it will be "irreparably injured" during the appeal absent a stay, (3) the stay will not "substantially injure the other parties interested in the

proceeding," and (4) the public interest favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors . . . are the most critical." *Id.*

Virginia seeks to stay a preliminary injunction pending appeal. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The plaintiff must show (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest." *Id.* at 20. The grant of a preliminary injunction is reviewed for abuse of discretion, but legal conclusions are reviewed "de novo." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 210 (4th Cir. 2024).

The standard for a stay pending appeal "does not require the trial court to change its mind or conclude that its determination on the merits was erroneous." *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995); *see, e.g.*, *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2023 WL 5617894, at *3 (E.D. Va. Aug. 30, 2023) (staying permanent injunction of a federal firearms regulation after sustaining a Second Amendment challenge); *Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473, 474 (E.D. Va. 2011) (staying order pending appeal despite noting that "[t]he court is not persuaded to tacitly abandon its ruling and find that the defendants are likely to succeed on appeal."). Rather, it is enough for the district court to find "that the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." *Fourteen Various Firearms*, 897 F. Supp. at 273; *see also Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC*, 2016 WL 3346349, at *2 (E.D. Va. June 16, 2016) (quoting same passage of *Fourteen Various Firearms*). In other words, could "reasonable minds … disagree on the correct outcome of the case"? *Fraser*, 2023 WL 5617894, at *3 (quotations omitted).

## **ARGUMENT**

The preliminary injunction should be stayed pending appeal. The equities favor the Commonwealth. And Virginia is likely to succeed on the merits—at the very least, reasonable minds can differ on the proper outcome. This case raises unsettled First Amendment issues with substantial consequences. SB 854 should be allowed to go into effect until those novel questions are resolved.

## I.       **Virginia is likely to succeed on the merits on appeal.**

Virginia is likely to succeed on the merits. Respectfully, Virginia submits that *Moody*'s test for facial challenges applies to NetChoice's claims, that SB 854 is not a content-based regulation, and that SB 854 is sufficiently tailored to survive intermediate scrutiny. But at the very least, these issues "could be rationally resolved" in Virginia's favor. *Fraser*, 2023 WL 5617894, at *3.

This Court need not "change its mind," but it should find that Virginia has made a sufficient showing of success on appeal to warrant a stay. *Fourteen Various Firearms*, 897 F. Supp. at 273.

### A.       **NetChoice's claims are subject to the *Moody* test for facial First Amendment challenges.**

To start, Virginia is likely to show on appeal that the *Moody* test applies to NetChoice's facial challenge to SB 854. Virginia's success on that issue alone would be enough for vacatur of the preliminary injunction. *See, e.g.*, *Moody*, 603 U.S. at 724-26 (vacating and remanding for application of the proper test for facial First Amendment claims); *Bonta II*, 170 F.4th at 754-60 (vacating district court's preliminary injunction of California's social media law because the district court did not properly apply *Moody*); *Doe v. Burlew*, 165 F.4th 525, 527, 532-33 (6th Cir. 2026) (vacating and remanding where district court "did not engage in the demanding comprehensive review that a facial challenge requires"); *GLBT Youth in Iowa Schs. Task Force v.*

7

*Reynolds*, 114 F.4th 660, 669-70 (8th Cir. 2024) (same); *see also* Va. PI Opp. at 9 (citing and discussing the *Moody* standard for facial challenges).

"NetChoice asserts a facial challenge," seeking to invalidate the statute not only as to the platforms but as to anyone. PI Opinion at 9. By design, such facial challenges are "hard to win." *Moody*, 603 U.S. at 723. Usually, the plaintiff must show that the law is unconstitutional "in every conceivable application." PI Opinion at 13. But under the overbreadth doctrine, First Amendment plaintiffs can prevail by demonstrating that "the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody*, 603 U.S. at 724. This requires the court to "perform a full-scope review of the law's coverage and an in-depth review of the law's applications" before "weighing the unconstitutional versus constitutional applications." PI Opinion at 13-14 (recognizing these two categories).

Reasonable minds could find that the Court did not properly conduct the required cataloging and weighing. The Court reasoned that NetChoice is "pursu[ing] the first type of facial challenge," as it "seeks to invalidate SB 854 based on its content restrictions, not overbreadth." PI Opinion at 14. But overbreadth—a procedural doctrine that relaxes standing requirements in First Amendment challenges, *see United States v. Arthur*, 160 F.4th 597, 605-06 (4th Cir. 2025)—is distinct from the substantive basis of that First Amendment challenge. NetChoice never asked to be in that first category of facial challenges—which would require it to carry the higher (and impossible) burden of proving *all* applications of SB 854 unconstitutional. *See* NetChoice Mem. in Supp. of Mot. for Prelim. Inj. at 13-14, Dkt. 5.[2] Instead, NetChoice's challenge falls—like all

---

[2] NetChoice did not claim to the contrary in opposing a stay in the Fourth Circuit. *See* NetChoice Opp. to Stay Mot. at 20, *NetChoice v. Jones*, No. 26-1252 (4th Cir. Mar. 20, 2026), Dkt. 20-1 (arguing that because "SB854 is unconstitutional in every application, ... of course the unconstitutional applications outweigh the constitutional ones").

other First Amendment facial challenges—into the second category. *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1019 (9th Cir. 2025) ("*Bonta I*"); *Doe*, 165 F.4th at 529-30.

No matter the substantive basis of a First Amendment challenge to a statute, and no matter the tier of scrutiny, a facial challenger must follow the procedural framework of cataloging the law's applications and showing the unconstitutional applications substantially outweigh constitutional ones. *Moody*, 603 U.S. at 740, 744 (requiring this for state statutes limiting platforms' editorial discretion, whether subject to "strict or intermediate scrutiny"); *see also, e.g.*, *Arthur*, 160 F.4th at 601-02 (content-based statute that criminalized teaching another how to make explosives); *GLBT Youth*, 114 F.4th at 669-70 ("content-based" restriction on books available in school libraries); *Doe*, 165 F.4th at 532-33 (ban on anonymous social media profiles). This procedure is required because even "content restrictions" subject to strict scrutiny are not automatically unconstitutional in all applications, PI Opinion at 14—they impose different burdens in different situations, each of which must be cataloged and analyzed for a sufficient interest and tailoring, *Bonta II*, 170 F.4th at 754-60.

The Ninth Circuit explained this in a decision involving NetChoice, issued after this Court's preliminary injunction. *Id.* at 755-56; *see also id.* at 751 ("NetChoice has been a party to many such cases—several before our court and the Supreme Court—and is presumably aware of the expectations for a facial challenge. At the risk of repetition, we offer similar guidance to NetChoice today."). Like here, "NetChoice contend[ed], and the district court concluded, that" California's statute "burdens speech based on content in *every* application." *Id.* at 755. But NetChoice had not "establish[ed] [a] factual record so that the district court could have properly considered every conceivable application." *Id.* at 758. Instead, NetChoice had focused on its preferred hypotheticals—"certain heartland applications"—and tried to "confine the battle to that

9

terrain." *Id.* (cleaned up) (quoting *Moody*, 603 U.S. at 724). The Ninth Circuit vacated that portion of the preliminary injunction and remanded, reiterating that "neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Id.* (quoting *Moody*, 603 U.S. at 744).

So even though "NetChoice seeks to invalidate SB 854 based on its content restrictions," "the appropriate framework *does* [ ] require a weighing of SB 854's applications." PI Opinion at 13-14 (emphasis added). Had NetChoice wanted to forgo that weighing and prove that "SB 854 is unconstitutional in every application," *id.* at 14, this Court still had to require NetChoice to "systematically" catalog and address "*every application*," *In re Georgia Senate Bill 202*, 160 F.4th 1171, 1176 (11th Cir. 2025); *Bonta I*, 152 F.4th at 1020-21.

Because NetChoice did not do so, many applications were not considered—including those in which the statute is likely only to have an "incidental effect on protected speech." *Free Speech Coal.*, 606 U.S. at 478. For example, despite this Court's concern, *see* PI Opinion at 21 (finding that SB 854 burdens "all users due to the age-verification requirement"), SB 854 does not meaningfully impair adults' access to social media; "it simply requires them to verify their age before accessing it," just as they would have to provide proof of age "to obtain alcohol, tobacco, a lottery ticket, a tattoo , . . . and a driver's license[.]" *Free Speech Coal.*, 606 U.S. at 479, 481-82 (citations omitted). And for minors, SB 854 is not a ban from social media nor does it "block minors' access to constitutionally protected speech," *contra* PI Opinion at 21; it is a one-hour parentally-adjustable default *per platform per day*. The record is devoid of proof—NetChoice's burden to adduce—that any child will be prevented from accessing desired content or that any platform will be unable to convey their own expression in that time. SB 854 is *at least*

10

constitutional in this substantial number of applications, making a facial challenge categorically inappropriate.

### B.    SB 854 survives First Amendment scrutiny.

Reasonable minds could disagree with the Court's conclusion that SB 854 regulates based on content. PI Opinion at 16-19; Va. PI Opp. at 13. States may regulate the content of speech only in narrow circumstances, for fear of silencing certain messages or viewpoints. But the government can "regulate features of speech unrelated to its content," *McCullen v. Coakley*, 573 U.S. 464, 477 (2014), "specify[ing] when, where, or how speech may be delivered," *Hulbert v. Pope*, 70 F.4th 726, 733 (4th Cir. 2023). These content-neutral regulations face intermediate scrutiny and need only be narrowly tailored to serve a significant governmental interest. So it is with SB 854.

### 1.    SB 854 does not discriminate among different types of content.

SB 854 sets a parentally adjustable one-hour default on any social media platform. Va. Code § 59.1-577.1(B). This default applies no matter the speech that occurs on that platform—regardless of "its message, its ideas, its subject matter, or its content." PI Opinion at 6 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)); *see* Va. PI Opp. at 14; Va. Mem. in Supp. of Mot. to Dismiss at 15, Dkt. 41.

This Court nonetheless held that SB 854's definition of "social media platform" discriminates based on content. PI Opinion at 16-17. To be a "social media platform," a site must "[c]onnect[] users in order to allow [them] to interact socially with each other" and allow users to

- "[c]onstruct a public or semipublic profile,"

- "[p]opulate a public list of other users with whom such user shares a social connection," and

- "[c]reate or post content viewable by other users, including content on message boards, in chat rooms, or through a landing page or main feed that presents the user with content generated by other users."

11

Va. Code § 59.1-575. To clarify that these functional features do not encompass websites where interactive features are incidental, the statute also states that "social media platform" does not include forums where "content" is "preselected by the provider and not generated by users":

> No service or application that consists primarily of news, sports, entertainment, ecommerce, or content preselected by the provider and not generated by users, and for which any chat, comments, or interactive functionality is incidental to, directly related to, or dependent on the provision of such content, or that is for interactive gaming, *shall be considered to meet this criterion on the basis of that function alone*.

*Id.* (emphasis added). For instance, Amazon is not a "social media platform" simply because customers can interact with each other by posting product reviews, just as the *New York Times* is not a "social media platform" simply because users can interact with each other in the comments section. Va. Mem. in Supp. of Mot. to Dismiss at 15.

NetChoice argued—and the Court concluded—that this language "exempt[s]" "news, sports, entertainment, ecommerce" or "interactive gaming" from regulation based on their subject matter. PI Opinion at 16-18. But that is not the best reading of the statute. The statute offers "news, sports, entertainment, ecommerce" or "interactive gaming" as *examples* of "content preselected by the provider and not generated by users." Va. Code § 59.1-575. The statute sets out a "straightforward, parallel" list with a catch-all "at the end of the list" capturing "the entire series." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402-03 (2021) (quotations omitted). Take, for example, a statute that criminalizes altering "any record, document, or tangible object." *Yates v. United States*, 574 U.S. 528, 544 (2015). "Tangible object" is the general category, and "records" and "documents" are a "subset"—illustrative examples informing the meaning of "tangible object." *Id*. Because "tangible object" is both the broadest term and ends the list, no magic word—like "other"—is required to indicate its catchall status.

SB 854 does not "discriminate[] based on subject matter." PI Opinion at 17. No website is exempted based on its content; a social media platform dedicated to sports or politics is just as covered by SB 854 as is Instagram or TikTok. Instead, the definition turns on whether any "interactive functionality" is secondary to provider-generated content—no matter the subject matter or viewpoint. The statute's functional definition thus "regulate[s] features of speech unrelated to its content." *McCullen*, 573 U.S. at 477; *cf. Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 789 (2011) (prohibiting the sale of "violent video games" that permit players to kill or assault); *Reed*, 576 U.S. at 159-61 (imposing different restrictions on outdoor signs based on topic, like whether they conveyed an ideology, advocated for a political candidate, or provided directions to an event).

The Court's contrary reading is the consequence of NetChoice bringing a pre-enforcement challenge before the Attorney General or any Virginia court had the opportunity to interpret the statute and explain how it operates. *See Broadrick v. Oklahoma*, 413 U.S. 601, 617-18 (1973). Even if this Court were inclined to read SB 854 differently, the Attorney General has offered a "limiting construction." *Id.* at 613; *accord Arthur*, 160 F.4th at 606. The Attorney General is the only party that can enforce this statute, and he has reasonably and "in plain terms [ ] interpreted" SB 854 to not provide content-based carve outs for news, sports, entertainment, ecommerce, and interactive gaming. *Broadrick*, 413 U.S. at 617. That construction must be respected. *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1084 (4th Cir. 2006).

### 2.    SB 854 draws permissible distinctions between speakers without reference to the content of speech.

This Court also classified SB 854 as content-based because in regulating only social media platforms, the statute "favors provider-selected speech over user-generated speech." PI Opinion at 18. But nothing about that distinction discriminates based on *content*. Laws distinguishing between

13

speakers are permissible so long as they do not reflect a "content preference" and are "justified by some special characteristic of the particular speaker being regulated." *TikTok Inc. v. Garland*, 604 U.S. 56, 72-73 (2025) (cleaned up) (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 658, 660-61 (1994)); *see* PI Opinion at 14-15 (recognizing this). The record does not suggest that SB 854 intended to target "ideas or images that [Virginia] thinks unsuitable" for children, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213-14 (1975), or that Virginia deemed "user-generated content" to be "more harmful," PI Opinion at 18. The Commonwealth is focused on regulating "the manner in which expressive activity occurs," *Bruni v. City of Pittsburgh*, 941 F.3d 73, 87 (3d Cir. 2019)—the "push notifications, infinite scroll, auto-play" and other features that are "addictive to children and cause[] them to spend more time on the platforms than is healthy," *Comput. & Commc'ns Indus. Ass'n v. Uthmeier*, 2025 WL 3458571, at *5 (11th Cir. Nov. 25, 2025). That regulation of interactive features "may affect certain speakers and topics more than others, but that is not enough to make it content based." *Id.* And Virginia had good reason to single out social media platforms: the Surgeon General's Advisory and other studies establish that excessive exposure to the interactive features on social media platforms uniquely triggers neural pathways comparable to addiction. Dr. Nelson Decl. ¶¶ 13-15; *see* U.S. Surgeon General Advisory on Social Media & Youth Mental Health at 3, Dkt. 16-3 (noting Surgeon General's Advisories "are reserved for significant public health challenges that require the nation's immediate awareness and action" and issuing Advisory to "call[] attention to the growing concerns about the effects of social media on youth mental health"). This is not the kind of speaker preference that can "be treated as though it is content based." PI Opinion at 18; *see Bonta I*, 152 F.4th at 1016 (rejecting argument that "focus on social media makes the entire act content based").

### C. SB 854 is narrowly tailored.

Reasonable minds could disagree with the Court's conclusion that SB 854 fails intermediate scrutiny. PI Opinion at 23-24; Va. PI Opp. at 18-19. For intermediate scrutiny, the regulation must "advance[] important governmental interests unrelated to the suppression of free speech" and must not "burden substantially more speech than necessary to further those interests." *Free Speech Coal.*, 606 U.S. at 471. Each requirement is met here.

For one, SB 854 advances an important state interest in protecting Virginia's children and in promoting parental control over children's social media, Va. PI Opp. at 19-20, as this Court has already recognized and as NetChoice does not contest, PI Opinion at 20 (citing Dr. Nelson's declaration and explaining "NetChoice concedes that Virginia has an interest in protecting children, and from the established record, the Court finds this interest is compelling."). Virginia does not seek to suppress any viewpoint or message, but instead to "protect[] its youth from the harms associated with the addictive aspects of social media," namely the rates of anxiety and depression tied to excessive time scrolling on social media. *Id*. at 27. This is a "compelling interest." *Id*.; *accord Uthmeier*, 2025 WL 3458571, at *6.

SB 854 is narrowly tailored to remedy the harm at hand. *See* Va. PI Opp. at 20-23. The statute does not bar any child from any social media platform, nor does it bar them from any features or content on those platforms. *Cf. Packingham v. North Carolina*, 582 U.S. 98, 107-08 (2017) (law completely prohibiting sex offenders from accessing any social media sites), *but see Uthmeier*, 2025 WL 3458571, at *6 (finding narrowly tailored a statute banning child access to social media without parental approval). Instead, SB 854 sets a one-hour *adjustable* default *per platform* to target the root of the problem: addicted children spending 10 plus hours a day scrolling. Va. Code § 59.1-577.1(B); Dr. Nelson Decl. ¶ 22 ("excessive social media use causes (or at very

15

least exacerbates) mental health illnesses"). This time limit "alleviates that harm in a direct and material way" by giving parents control without preventing children from engaging in their desired speech. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 913 (4th Cir. 2025) (cleaned up); *see* PI Opinion at 21 (recognizing that minors that exceed the default can obtain the same content and messages through other forums).

In finding to the contrary, this Court effectively applied strict scrutiny by another name. *Compare, e.g.*, PI Opinion, at 23 (relying on *Packingham*, 582 U.S. at 106, and *Brown*, 564 U.S. at 805, to find SB 854 insufficiently tailored) *with Uthmeier*, 2025 WL 3458571, at *7 (explaining that "cases centered on impermissible content-based restrictions," like *Brown*, should not be used to assess intermediate scrutiny).

This Court faulted SB 854 for being overinclusive because it "covers a significant amount of protected speech." PI Opinion at 23. But nothing in the record suggests that SB 854 "block[s] minors' access" to any speech or that minors "would be barred from watching an online church service" or "science or history programming." *Id.* at 21. All minors must do is get their parents' permission to watch more than an hour. And they only have to get that permission once—by having their parent change a base setting. This is at most an incidental burden on speech, and as far from a ban on speech as possible without giving up on protecting children at all.

Moreover, intermediate scrutiny does not demand that a statute limit its reach to "only unprotected speech," or that it be "the least intrusive means of achieving the desired end." *Uthmeier*, 2025 WL 3458571, at *6, *8 (quotations omitted). The statute may cover protected speech so long as the government's interest "would be achieved less effectively absent the regulation" and it does not "burden *substantially* more speech than is necessary" to address the problem. *Free Speech Coal.*, 606 U.S. at 496 (emphasis added) (quoting *TikTok*, 604 U.S. at 70);

16

*see Grayned v. City of Rockford*, 408 U.S. 104, 120 (1972) (upholding statute prohibiting picketing near schools even though it "prohibits some picketing that is neither violent nor physically obstructive" and "[s]uch expressive conduct may be constitutionally protected at other places or other times"). So it is here. Even if a child's parents do not change the limit, this time limit would only require the child to look to other, less addictive forms of media for online church or educational programming, and does not prevent the statute from being sufficiently tailored. *See Uthmeier*, 2025 WL 3458571, at *8.

This Court further deemed SB 854 overinclusive because "its age verification burdens adults' ... rights to access protected speech." PI Opinion at 23. But the Supreme Court rejected that position last Term in *Free Speech Coalition*. Age verification is a "modest" and common tool used to "protect[] children" while "allowing adults full access to the content in question." 606 U.S. at 496 (upholding age verification for adults accessing pornography as "sufficiently tailored"); *see supra* p. 10.

This Court also considered SB 854 to be underinclusive because it does not address digital gaming, relying on extra-record studies suggesting that gaming can be addictive too. PI Opinion at 23-24. But "the First Amendment imposes no freestanding underinclusiveness limitation," and a State "need not address all aspects of a problem in one fell swoop." *Free Speech Coal.*, 606 U.S. at 498 (quotations omitted). "[P]olicymakers may focus on their most pressing concerns," and even under strict scrutiny, the Supreme Court has upheld regulations that "conceivably could have restricted even greater amounts of speech in service of their stated interests." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015). Social media poses particular harms to children, and the Commonwealth acted to resolve that problem. "The First Amendment does not put a State to [an]

17

all-or-nothing choice," *id.* at 452, and Virginia cannot be blamed for not regulating all other addictive products in the same statute.

Finally, this Court faulted Virginia for not trying other means to resolve the problem, reasoning that "parents have ample tools to limit minors' access to social media" and suggesting that the Commonwealth "work with companies and launch advertising campaigns to ensure parents know how to use the current tools effectively." PI Opinion at 22. But intermediate scrutiny does not demand that the government first try out "some less-speech-restrictive alternative." *Free Speech Coal.*, 606 U.S. at 497-98 (rejecting argument that State had to "encourag[e] parents to install content-filtering software on their children's devices" before requiring age verification); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 797 (1989) (rejecting argument that intermediate scrutiny requires "sifting through all the available or imagined alternative means of regulating").

And the constitutionality of SB 854 "does not turn on [judicial] agreement with the [legislature] concerning the most appropriate method for promoting significant government interests." *Free Speech Coal.*, 606 U.S. at 496 (quoting *Ward*, 491 U.S. at 800). The General Assembly was entitled to conclude "that parental controls were not working" and that "simply offering parents a new tool ... would not suffice when parents were not taking advantage of the tools already available." *Uthmeier*, 2025 WL 3458571, at *8. "[B]oth parents and children struggle" to use platform-implemented controls, as Dr. Nelson "regularly" sees first-hand in her practice. Dr. Nelson Decl. ¶¶ 26-27. Platforms' profit incentive means maximizing kids' time on the platform and designing control features that are hard for parents to find and use. But one can reasonably expect platforms to make that feature more prominent if the default is set to one hour.

18

Because the Commonwealth's interest in protecting children "would be achieved less effectively" without SB 854, and the law does not burden substantially more speech than necessary to serve that interest, it survives intermediate scrutiny. *Free Speech Coal.*, 606 U.S. at 498.

*    *    *    *    *

In sum, Virginia respectfully submits that it is likely to succeed on the merits on appeal. But as the above illustrates, there is at least room for reasonable minds to differ on these novel and substantial questions. That warrants a stay pending appeal. *See Fitzgerald v. Alcorn*, 2018 WL 709979, at *1 (W.D. Va. Feb. 5, 2018) (staying order declaring a Virginia law unconstitutional under the First Amendment since the appeal presented a "substantial case on the merits" because it involved "complex issues of justiciability," the statute in question was "unique in our nation," and "constitutionality of this statute ha[d] been the subject of much debate and prior litigation"); *Worth v. Jacobson*, 2023 WL 3052730, at *2-3 (D. Minn. Apr. 24, 2023) ("[T]his Court concludes that, although it stand[s] by the reasoning and conclusions of its Order [finding state law unconstitutional under the Second Amendment], ... the likelihood-of-success factor support entry of a stay of the injunction pending resolution of an appeal" because the case presents "significan[t]" issues" and "this area of law is far from settled" and subject to "rapid development").

## II.    The equities favor a stay pending appeal.

Not only is the Attorney General likely to win on the merits of an appeal, but the equities strongly favor a stay.

### A.    Virginia will be irreparably harmed.

The Attorney General is currently prevented from enforcing Virginia's bipartisan and unanimously adopted statute protecting its children. SB 854 went into effect on January 1, 2026, but social media platforms declined to comply. Before the preliminary injunction, the Attorney

19

General sent compliance letters to several platforms. *See* Va. Code § 59.1-584(A). Those enforcement efforts are now at a standstill. Preventing Virginia from enforcing its law "clearly inflicts irreparable harm on the [Commonwealth]." *Abbott v. Perez*, 585 U.S. 579, 602-03 & n.17 (2018). Indeed, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)); *cf.* PI Opinion at 24-26 (not addressing these citations or the Commonwealth's own irreparable harm). And this is not just any law: SB 854 is intended to serve one of the Commonwealth's most important responsibilities—protecting its children. *See Ginsberg v. New York*, 390 U.S. 629, 640 (1968) (recognizing this "transcendent interest in protecting the welfare of children," above and beyond "parental control or guidance") (quotations omitted).

### B.    NetChoice will not suffer irreparable injury.

In contrast, NetChoice suffers no irreparable harm if SB 854 is in effect pending appeal. *See* Va. PI Opp. at 27-29. SB 854 satisfies the First Amendment, and "[w]ithout [an] alleged constitutional injury," NetChoice suffers no "irreparable harm." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). Either way, NetChoice's purported "loss of First Amendment freedoms" is not so significant as to outweigh the harms to the Commonwealth and its youth. *Contra* PI Opinion at 24-26; *see Uthmeier*, 2025 WL 3458571, at *9. Platforms will still be able to speak to adult users for as long as they want, and vice versa. And SB 854's default setting permits both children and social media platforms to convey any content they desire in the amount of time that parents permit their children to access the platform.

### C.    The public interest favors staying the injunction pending appeal.

Finally, the public interest demands a stay. Va. PI Opp. at 29-30; *cf.* PI Opinion at 26 (collapsing public interest into merits of the First Amendment claim). Social media is harmful to

20

children, as NetChoice never contested. Late last month, two juries held major social media platforms liable for those harms. *Social Media Cases*, No. JCCP 5255, *supra* at p.3 (California jury finding Meta and YouTube liable for negligence and failure to warn for knowingly using addictive design features and awarding punitive damages because the platforms acted with malice, oppression, or fraud); *New Mexico v. Meta Platforms Inc. et al.*, No. D-101-CV-2023-02838, *supra* at p.3 (New Mexico jury finding Meta willfully violated the state's Unfair Practices Act by misleading the public about the safety of its platforms and engaging in unconscionable practices that exposed child users to sexual exploitation); *see also* Va. Rule 28(j) Letter, *NetChoice v. Jones*, No. 26-1252 (4th Cir. Mar. 27, 2026), Dkt. 23.

Virginia has not been spared these harms. The Commonwealth is facing a youth mental health crisis. Anxiety, depression, self-harm, and suicide have skyrocketed. Dr. Nelson Decl. ¶¶ 18-23. To be sure, as this Court noted, the public has an interest in avoiding constitutional violations. *See* PI Opinion at 26. But there is no infringement here. And the public has an even more compelling interest "in the protection of children and the enforcement of [a] law that seeks to do just that." *Uthmeier*, 2025 WL 3458571, at *10; *accord L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 421 (6th Cir. 2023) (staying injunction pending appeal given "the public-health considerations undergirding the law" and "irreversible health risks to [the State's] children"). Platforms' desire to keep kids scrolling does not outweigh the public's interest in the "prompt execution" of a democratically enacted law protecting the Commonwealth's most vulnerable. *Nken*, 556 U.S. at 427; *see NetChoice, LLC v. Fitch*, 145 S. Ct. 2658 (2025) (Kavanaugh, J., concurring) (recognizing that the harms in this space warrant allowing laws to go into effect, even despite doubts on the merits).

21

## CONCLUSION

For these reasons, Defendant Attorney General Jay Jones requests this Court to stay its order granting NetChoice's Motion for a Preliminary Injunction and preliminary enjoining him from enforcing SB 854, *see* Dkt. 51, pending appeal.

Dated: April 15, 2026

Respectfully submitted,

**JAY JONES, in his official capacity as Attorney General of the Commonwealth of Virginia**

*/s/ Benjamin L. Hatch*
Benjamin L. Hatch (VSB No. 70116)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street
Suite 9000
Norfolk, Virginia 23510
T: 757.640.3727
F: 757.640.3947
bhatch@mcguirewoods.com

Tillman J. Breckenridge
SOLICITOR GENERAL
OFFICE OF THE ATTORNEY GENERAL

Triston Chase O'Savio (VSB. 100111)
OFFICE OF THE ATTORNEY GENERAL
202 North 9th Street
Richmond, VA 23219
T: 804.845.4898
tosavio@oag.state.va.us

Erin B. Ashwell (VSB No. 79538)
John D. Adams (VSB No. 65203)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
T: 804.775.1002
F: 804.698.2002
eashwell@mcguirewoods.com
jadams@mcguirewoods.com

22

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 15th day of April, 2026, a true and correct copy of the foregoing was served on all registered counsel of record via Notice of Electronic Filing through the Court's CM/ECF system.

/s/ Benjamin L. Hatch
Benjamin L. Hatch (VSB No. 70116)

23